MATIENZO, PLAINTIFF AND APPELLEE, *v.* CANCIO, ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan, Section 2, in An Action of Ejectment and for Damages.

No. 1313.—Decided December 1, 1915.

EVIDENCE—TAKING TESTIMONY IN ABSENCE OF DEFENDANTS—AGREEMENT BE-TWEEN PARTIES—ABUSE OF DISCRETION—REOPENING OF CASE.—In this case the attorneys for the parties and the judge agreed to go to a certain place to take the testimony of a witness who was physically unable to appear in court and the attorney for the plaintiff agreed to take the attorney for the defendants to the place in his automobile. Accordingly, the attorney for the plaintiff called at the house of the attorney for the defendants and upon being informed that tho latter had already gone, the judge and the attorney for the plaintiff proceeded to take the testimony of .the witness as well as of another witness in the absence of the attorney for the defendants, who duly objected and excepted to this manner of taking said testimony. *Held:* That the lower court committed error for it was without authority to take the testimony of the said witnesses in the absence of the defendants who had a right to be present at each and every stage of the trial and that even if it were discretional with the court, it abused such discretion in refusing to re-open the case.

ID.—EJECTMENT—DESCRIPTION OF PROPERTY—PLAN OF SURVEYOR.—A court com-mits error when in an ejectment suit, without other data or information than the report of the surveyor, it admits a plan on the theory that the plaintiffs had described the land as being the same in two different descriptions.

ID.—ID.—IDENTIFICATION OF PROPERTY—BURDEN OF PROOF.—In an action of eject-ment where the question is the identity of property the burden is squarely on the plaintiff to prove every step of his case.

ID.—ID.—PLAN OF SURVEYOR.—The plan of a surveyor made without summoning the adjacent owners and based exclusively on statements of witnesses whose source of knowledge was not shown, is not sufficient to prove title in the plain-tiff in an action of ejectment.

ID.—ID.—DESCRIPTION OF PROPERTY.—Even supposing that the description of the
   property contained in the original deed should be construed liberally with
   regard to the name of the ward, the plaintiff is bound by it in the absence
   of an explanation of the supposed mistake.

.The facts are stated in the opinion.

Mr. *Juan de Guzmán Benítez* for the appellants.

Mr. *Frank Antonsanti* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Anastasia Bultrón Sánchez and others made a public deed
before Notary Salvador Suau Carbonell, by which they sold
to Joaquín Matienzo, the complainant herein, their title to
the following-described land, namely:

"A rustic property situated in the ward of Sabana Abajo, of the
municipal district of Carolina, containing, more or less, 163 acres;
bounded on the north by the property formerly known as 'La Pro-
videncia,' now belonging to Juan Cancio Varcárcel; on the east by
the lands of Justo Rivera, Manuel Antonio Barriola, Isaías Andino,
Martín González and Bernabé Isaac; on the south by a country road
which separates the land from the lands of Genaro Vizcarrondo and
Juan Cancio Varcárcel, and on the west by the brook San Antón
which separates the property from the land 'Campo Rico.' "

The complainant maintains that this was the same prop-
erty which Miguel Sánchez, the ancestor of the complainant's
vendors, acquired in 1827 and which is described as follows:

"A piece of land situated in the ward of San Antón, a division
of Trujillo, with the following metes and bounds: Beginning with
a *ceiba* or *molinillo* tree, the dividing point with Daniel Goyley, and
running toward the north up to a *jobo* tree, the dividing point be-
tween Fernando Alvarez and the heirs of Manuela Allende, and from
this point running east by southeast with a *granadillo,* the dividing
point between the said heirs of Allende and Doña Teresa Marcó,
and from this point running toward the southeast, inclining toward
the south, up to a *molinillo* stake, the dividing point between the
said Marcó and José Antonio del Castillo, and from this point run-
ning toward the south southeast, bordering on the land of Daniel
Goyley up to the *molinillo* or *ceiba* tree, the point of beginning."

Now, while these two descriptions are entirely distinct,
as the complainant's vendors maintain that they were the

heirs of Miguel Sánchez the registrar of property recorded the conveyance apparently as being a more modern description of the land possessed by Miguel Sánchez, but stated on the record that the new description was unidentified with the original title. The complainant brought a suit against the defendants claiming that they were in illegal possession of a part of the 163 acres first described. The defendants have not seriously disputed the fact that they were in possession of lands included within the description heretofore first set forth, but they maintain that the complainant did not and could not identify said first description with the land acquired by Miguel Sánchez in the year 1827. We think that the complaint in this case is defective for several reasons that we shall discuss hereafter, but it seems more convenient for the purposes of this appeal to take up first the errors concerning the attempt to identify the land committed at the trial of the case.

One of the principal grounds of contention was that the lands of Miguel Sánchez appear to be in the ward of San Antón, while the lands of the defendants are all located in the ward of Sabana Abajo.

In his attempt to prove that the wards were the same, or, at least, that the property possessed by the defendants was identical with the lands claimed by Miguel Sánchez, or partially so, the complainant offered to take the testimony of an old man by the name of Gumersindo Andino, it being hence stipulated by the parties that the judge, the attorney for the complainant and the attorney for the defendants should proceed to Trujillo to take the testimony of said Andino, who was a very old man. It was also distinctly agreed that the attorney for the complainant should take the attorney for the defendants to the spot in his automobile. Accordingly, the attorney for the complainant called at the house of the attorney for the defendants and was told by the wife of the latter that her husband had already gone. It transpired that the wife of the defendants' attorney meant

that the husband had gone to town. The judge and the attorney for the complainant proceeded to take the testimony of Gumersindo Andino without the intervention of the attorney for the defendants. Not only did the court accept the testimony of Andino without the intervention of the defendants, but also heard and accepted the testimony of another old man, Anselmo Febes. To this manner of taking the testimony without his intervention the attorney for the defendants duly objected and excepted, the court contenting itself with offering to permit the defendants' attorney an opportunity to cross-examine the witnesses if he so desired.

We think the court committed an error in proceeding to hear testimony without the intervention of the defendants. The agreement is undisputed that the defendants' attorney was to be called for by the attorney for the complainant and until some default not arising in this case could be attributed to the former the court was without authority to take the testimony of the aforesaid witnesses. Even if there had been a doubt about the compliance of the defendants' attorney with the terms of the arrangement, we still think it would have been an abuse of discretion not to reopen the trial at the request of the defendants' attorney, to permit him to see and hear the testimony of the witnesses. There was absolutely no authority in the court to hear the testimony of the additional witness. The whole thing was irregular. The defendants have a clear right to be present at each and every stage of the trial unless in some manner they waive such right, which was not shown in this case.

In his brief the appellee says that the question of the identification of the wards was unimportant inasmuch as the title had already been proved. We think it was a very material and important matter in this case to show the identity of these two wards. The complainant evidently thought so because he made the special arrangement to take the testimony. So far as the testimony of these two old men was reliable it tended to show, in a more or less vague way, that

the land of Miguel Sánchez was located somewhere around, or about or within the same bounds as the lands which the defendants here are holding. The case would have to be reversed on this ground alone.

The principal testimony to prove the title of the complainant was the statement of the surveyor, Castro. He said substantially that given the ancient description of 1827 he went to some place more or less vaguely defined, where, accompanied by Anastasia Bultrón, by Gumersindo Andino and perhaps some other old men, he proceeded to stake out and measure the land described in the deed of 1827. He summoned none of the neighbors; he asked no information of the defendants in possession of the land, but, it appears, relied solely on the statement of Anastasia Bultrón and other witnesses, the source of whose knowledge is in nowise shown. He made his plan early in December, 1910, and the deed from Anastasia Bultrón Sánchez and others to the complainant was made on December 27, 1910. When the plan so made was offered in evidence the defendants objected on the ground that the land described was in a different ward, and the court admitted the plan on the theory that the complainants had described the land as being the same in the two descriptions. This was early in the trial and before any other attempt to identify the land had been made beyond the statements of the surveyor. The action of the court was error.

Even supposing that the court was admitting the plan temporarily, as it did the deed, for the purpose of later identification, we still think that the plan had no logical probatory force whatever. The surveyor said that he relied on Anastasia Bultrón and on Gumersindo Andino. The source of the knowledge of either of these witnesses was not satisfactorily shown. It appears that Anastasia Bultrón is dead, but the source of her information is not shown; and as for Gumersindo Andino, when asked about it he said he did not help the surveyor mark out the boundaries. None of the

ordinary procedure of calling the neighbors or possessors was followed. Under the circumstances we think the plan was never shown to be competent for the purpose of proving title in the complainant.

Taking the title as a whole, we find an utter lack of identification in the two properties. The defendants indeed admit that Anastasia Bultrón possessed seven or eight acres near them, but other than this admission there is no satisfactory proof identifying the land of Miguel Sánchez with the property possessed to-day by the defendants. Even taking the testimony of Gumersindo Andino and Febes as it stands on the record, we are satisfied that it is entitled to very little weight. In a suit of reivindication where the question is the identity of property, the burden is squarely on the plaintiff to prove every step of his case. In this case it was the identity of the land. Gumersindo Andino testified vaguely of Miguel Sánchez having lived on the land and said his land touched on two of the neighbors described in the original deed, and then talked obscurely about the ward in which this land is located. He might have been any age according to his testimony, from eighty odd to one hundred odd. The testimony of Febes is not more satisfactory. We are utterly unconvinced that the piece of land described as being in San Antón is located in Sabana Abajo.

One would think that where it came to the identity of two wards the complainant would make some attempt to locate them from the public records. Even supposing that the description contained in the original deed was loosely constructed with regard to the naming of the ward, nevertheless the complainant was bound by it in default of an adequate explanation of the supposed mistake. A glance at the original description will show the names of a great many neighbors. There is nothing in the record to show what became of any of them or who owns the land held by them. The surveyor first and the complainant afterwards should have made some attempt to trace the history of these neighbors, as after

so many years the trees described in the original deed may long since have disappeared. Comparing the two descriptions, there is absolutely no similarity between them. The second description refers to two natural boundaries—a vicinal road and a brook. We have nothing in the record to show how a brook arose on the west or a vicinal road on the south of the land originally described. Furthermore, some of the defendants called as witnesses by the complainant gave testimony describing more or less accurately the origin of their titles. When one of them attempted to explain whether Sabana Abajo was ever known as San Antón, objection was sustained on the ground that the intention of the case is to prove how the ward was known in 1827. The manner in which the property was attempted to be identified would make almost any antecedent history of these two wards material and relevant. The court erred in excluding this testimony. The proof of the defendants tended to show the due origin of their titles even if such proof had been necessary on their part.

There are other errors alleged in the case that we do not consider it necessary to discuss, with the exception of the alleged bad complaint. The complaint joined all these defendants although each of them owns and possesses a title to the land separately. The total sum of the lands owned by the defendants claimed in this suit did not equal by thirty or more acres the 163 acres claimed in the complaint.

There was no attempt in the complaint to describe or locate the individual pieces of land claimed or owned by the defendants. This might not have been important after trial if the complainant had succeeded in identifying the land, because the defendants did not raise such question and it might be deemed that the lack of specific averment was cured by the proof, but we think that the same defect that runs through the case exists in the complaint. If the complainant was relying upon the identity of these two descriptions, some more specific attempt should have been made in the com-

plaint than simply to say that the second description is of the same property as the first description. Under all these circumstances, we think that the court erred in rendering a judgment for the complainant and that a judgment should have been rendered for the defendants; therefore the judgment appealed from should be reversed and another rendered by this court dismissing both the complaint and the counter-complaint, with the costs and attorney's fees, in an amount to be fixed by the lower court, upon the plaintiff.

*Reversed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.